Michael S. Di Croce, Esq. NJ # 000231984
Attorney for Plaintiffs
**Di Croce Law Firm, PC**
276 Indian Mills Road, Shamong NJ 08088
Phone: 609 268-6331 /Fax: 609 388-5673
Email: Dicrocelaw@gmail.com / mdclegal@comcast.net

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONEY BEAL & RICHARD BEAL, Wife and Husband,<br>     *Plaintiffs*<br>vs.<br><br>PREMIER ENTERTAINMENT AC, LLC D/B/A BALLY'S ATLANTIC CITY CASINO RESORT, IGT A/K/A INTERNATIONAL GAME TECHNOLOGY, JOHN DOES 1-5, & ABC CORPORATIONS 1-5<br><br>     *Defendants* | CASE NO:1:24-CV-97815<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND FOR CAUSES OF ACTIONS**<br><br>1. **BREACH OF ALEATORY CONTRAC**<br>2. **BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**<br>3. **NEGLIGENCE**<br>4. **NEGLIGENT MISREPRESENTATION**<br>5. **FALSE PROMISE**<br>6. **FALSE ADVERTISING**<br>7. **RACKETEERING** |

Now comes Plaintiffs, Roney and Richard Beal, by and through their counsel, Michael S. Di Croce, Esq., of Di Croce Law Firm, by way of complaint against the Defendants hereby state as follows:

## THE PARTIES

1. Plaintiffs, Roney and Richard Beal, husband and wife, reside at 367 Stokes Road. Shamong Twp, NJ 08088. Mr. and Mrs. Beal were long-time valued customers of Bally Atlantic City since it changed from Bally's Park Place in 2000. Plaintiffs were longtime Bally's members.

2. Upon information and belief, Defendant, Premier Entertainment AC, LLC d/b/a Bally's Atlantic City Casino Resort (hereafter Bally's) is a casino and corporation, doing business in New Jersey, with an address of 1900 Pacific Avenue in the city of Atlantic City, New Jersey

08401.

3.      Upon information and belief, Defendant, IGT A/K/A International Game

Technology, (hereafter "IGT") is a Nevada-based corporation doing business in Atlantic City,

New Jersey. IGT operates its progressive slot machine business in various locations in the United

States, including at the Bally's Casino in Atlantic City New Jersey.

4.      Defendants John Does 1-5 are fictitious persons whose identities are presently unknown

to Plaintiffs.

5.      Defendants ABC Companies 1-5 are fictitious entities whose identities are presently

unknown to Plaintiffs.

## FACTS COMMON TO ALL COUNTS

6.      Plaintiff, Roney Beal, was lawfully in Bally's Casino in Atlantic City on February 25,

2024, playing a progressive slot machine known as the "Wheel of Fortune" located on the

Bally's slot machine floor area.

7.      Upon information and belief, Defendant, IGT is the maker of the "Wide Area,

Progressive" ("WAP") slot machine in question (identified as CJo6 #14069).

8.      Defendant Bally's was licensed to operate a casino in Atlantic City, New jersey,

Including the "Wheel of Fortune" WAP slot machine.

9.      Plaintiff, Roney Beal, using marital funds, played the round, pushed the spin button, and

the machine began a new round of play and all three reels on the machine started spinning

normally making several complete rotations.

10.      Plaintiff, Richard Beal, accompanied his wife and was a witness to the material facts set

forth in this complaint.

11.    After playing the maximum bet, and then spinning the bottom reels, the machine landed on "Wild", "Wild 2X", and "Spin" and began playing the "Wheel of Fortune" theme song indicating a win.

12.    This brought up a new "Press to Spin" option for the Plaintiff to spin the "Wheel of Fortune" at the top of the machine, which Players cannot access unless there is a win on the reels.

13.    Plaintiff pressed the "Press to Spin" button and it landed straight up and down on the jackpot. The blue light came on the top of the machine and the "3D" gold coins appeared indicating Plaintiff hit the jackpot.

14.    The machine made a different sound when Plaintiff hit the jackpot.

15.    Prior to the spin in question, the machine operated normally and did not have any malfunctions, computer glitches, or tilts and had no problem accepting Plaintiffs money.

16.    When the machine stopped spinning, the machine indicated the amount of the "Wide Area Progressive" Jackpot was $1,277,954.35, the top line payout on the machine.

17.     Also appearing on the screen was the "2X" symbol, indicating that the Win was doubled in the amount of $2,555,908.70.

18.    The jackpot win was witnessed by a number of disinterested witnesses who confirmed to the Bally's casino employees that the plaintiff had won the jackpot.

19.    After the slot machine signaled the jackpot winner, the machine lit up showing the amount of the Win, Gold Coins, and the "2X" winner symbol.

20.    After hitting the jackpot, Plaintiff pushed the service button to get the assistance of Bally's employees and, for the first time, a "REEL TILT" message appeared at the bottom of the

screen.

21.     A Bally's casino employee inserted his ID card and key in the machine and opened it.

22.     Bally's employees then told the Plaintiff she didn't win, changing their story several times as to why she allegedly did not win.

23.      Over Plaintiff's objection, Bally's employees then began to push some buttons and spun the wheel multiple times in the now open slot machine, further tampering with the evidence of the Plaintiff's win.

24.     Bally's employees, over the objection of the Plaintiff, spun the wheel one additional time and told her she won approximately $370, and that she would have to sign off on this amount as her winnings.

25.     Balley's employees instructed all of the witnesses to stop filming with their phones and threatened to take their phones from them.

26.     Plaintiff requested that she be able to have someone from Bally's or New Jersey Division of Gaming Enforcement (hereafter NJDGE) review the tapes and check the machine but, was told no one was on site.

27.     Plaintiffs were told by Bally's that the machine malfunctioned, was a "computer glitch", and a "tilt" and that they would not pay the jackpot winnings.

28.     The Plaintiff was advised that only after the Plaintiff filed a 'Patrons Complaint' would the NJDGE get involved.

29.     Plaintiff filled out the 'Patron's complaint' and to date, has never heard a word from the NJDGE, Bally's or IGT.

30.     Later, the Plaintiffs were told to leave, and they peaceably left the Casino without any

winnings.

31.      On the following morning, February 26, 2024, Plaintiffs returned to Bally's to speak with management would not meet with them and they were again given various excuses as to why they would not be paid their winnings.

32.      When Plaintiff Roney Beal told the Bally's employees she was going to contact a lawyer, they were rudely escorted off the property and told, "never to come back".

33.      On February 29, 2024, the Plaintiffs' undersigned counsel advised Bally's, New Jersey Casino Control Commission and NJDGE of this disputed failure to pay winnings and requested that all evidence be preserved and that the machine not be tampered with any further.

34.      On April 1, 2024, Plaintiffs' undersigned counsel was told by Harrah's legal counsel, Luis Pinedo, Esquire, that Bally's was not responsible for the payout but, a third-party, IGT was and that the NJDGE had now taken over the investigation.

35.      Undersigned counsel again requested that the machine be taken out of service, that no further action be taken as to the inspection of the machine, computer hardware, software, and programming until Plaintiffs' expert could review them and that all of the video surveillance was to be supplied to Plaintiff.

36.      Plaintiff's counsel again requested Bally's to preserve all evidence and was met with and "It's out of Bally's hands".

37.      Plaintiff's counsel again requested NJDGE to preserve all evidence and was met with "We have received your email".

38.      Bally's has refused Plaintiff's request to review the video surveillance tapes and the slot machine.

39.     Despite the passage of more than 7 months, numerous requests, and a filing of an OPRA request, the NJDGE has failed to supply any information to Plaintiff but has had numerous contacts with Defendants.

40.     Undersigned counsel has requested information and preservation of all evidence from NJDGE on several occasions only to be advised "We acknowledge receipt of your email".

41.     Plaintiffs, having been denied their winnings and having been lied to in front of witnesses now fear that: Bally's and IGT will further destroy or fail to preserve evidence that Plaintiff won the jackpot; that Defendants will destroy any evidence that the alleged malfunction was subsequent to the winning of the jackpot; and, that Bally's employees, under Bally's and IGT's control, improperly tampered with the machine.

42.     Defendants were to provide proof, per the Magistrate Judge's order, that the machine in question was secure and to date, have not provided such.

## BACKGROUND

### A.  BALLY'S DECEPTIVE MARKETING CAMPAIGNS TO "HOOK" PLAYERS WITH THE PROMISE OF A PAYOUT

43.     The ultimate goal of advertising is to influence behavior. That is, to encourage people to take a particular action, in this case "come to Bally's and gamble on the WAP "Wheel of Fortune Slot Machine." Casino operators, like Bally's and IGT, have spent hundreds of millions of dollars over the past years hawking their wares on TV, Billboards and social media with celebrity-filled advertisements inducing players to play Bally's slot machines.

44.     Defendants have targeted members of the public, including the Plaintiffs, with advertisements to their computer, television,  smart phone, and radio, offering "free spins" and

"incentives". For example, Plaintiffs have received numerous communications, offering free gifts, meals, and other perks to 'Play' at Bally's.

45.     Defendants have a strategic and methodical effort to make slot machine betting seem no different than going to the grocery store to pick up a loaf of bread.

Defendants' investors demand that the companies develop strategies and promotions to get the consumer to play the games and get players "hooked". Senior VP of Marketing for Steve Wynn, president and COO for Donald Trump, and COO for Merv Griffin and also owned or operated gambling operations in five U.S. States and Greece knows the language of "hooking" a small-time gambler and how to land a "whale," someone willing to risk tens of thousands of dollars on a single bet. [1]

46.      Bally's promoted and capitalized on the belief that one of the biggest motivations to play the slots is the possibility of "winning the big jackpot". Defendants publicized numerous promotions and offerings to entice people, including the plaintiffs, to "play" the games with promise of winners being paid.

47.     Plaintiffs were induced to gamble at Bally's, in part, due to the Bally's advertising and they had the expectation that they would be paid any winnings.

## B. CONTRACT AND PLAYER FUNDS

48.      An aleatory contract is where an uncertain event determines the parties' rights and obligations.

———————————————

[1] See: 02/13/2022 07:00 AM EST. *Jack O'Donnell is author of the memoir Trumped! The Inside Story of the Real Donald Trump His Cunning Rise and Spectacular Fall.*

49.     In this case, slot machine gambling, wagering, or betting gives rise to an aleatory contract.

50.     Plaintiff, Roney Beal, using marital funds, inserted the maximum amount, and spun the wheel using the push button winning the WAP jackpot.

51.     The payout listed on the display constituted the contract between the casino and the player.

52.     IGT, the slot machine maker, did not design their machines to make it obvious to players that a "REEL TILT" is actually a "glitch" or "malfunction", not a true win.

53.     The casino failed to preserve the evidence by tampering with the machine, rather than calling the gaming commission so that they could confirm the actual alleged machine malfunction.

54.     Bally's failed to timely report the alleged malfunction to the regulators before repeatedly tampering with the  machine.

55.     Bally's, with the knowledge and consent of IGT, failed to protect the evidence, thereby spoiling the evidence.

56.     While Bally's is responsible to its patrons, the culprit is also the manufacturer, IGT, by failing to properly test and run diagnostics "on demand" to test the random number generator (RNG), the heart of the machine.

57.     By failing to pay, Defendants have breached the contract with Plaintiffs.

## C.  OVERVIEW OF THE SCHEME

58. Defendants scheme consisted of ten parts:

(1) create a corporate entity, claiming to provide Progressive Slot Machines throughout the

United States and Globally while concealing that Bally's casino did not own the machine and would claim it was not responsible for any payouts;

(2) aggressively market the large progressive payouts without advising players that Bally's is not the responsible entity to pay the winnings;

(3) misleading 'players' as to the odds of winning;

(4) denying that there is a contract with players when they win, in an effort to mask the fraud;

(5) intentionally refusing to issue any jackpot winnings by falsely claiming a "Reel Tilt" when there is a jackpot win;

(6) performing no services except providing a slot machine, with insufficient warning notices, thus ensuring that most bets will be lost to the casino;

(7) intentionally avoiding communication with customers and refusing to issue any jackpot winnings by falsely claiming a "Reel Tilt";

(8) failing to give sufficient notice that winnings would not be paid when there was a "computer glitch" even when the machine registered a jackpot hit;

(9) creating different corporate entities, in and out of the United States, in order to continue defendants fraudulent practices of claiming that they have no responsibility to pay where there is a "computer glitch", even though there were no adequate written warnings to the player; and, (10) intimidating players and witnesses by threatening that there phones would be confiscated if they recorded events of the win or Bally's tampering with the WAP slot machine.

### D. THE FRAUD REVEALED

59.    Bally's and IGT should bear the risk of a computer malfunction, not the 'Player'. When you pay a contractor to perform work and he claims a mechanical malfunction, he is still responsible to perform the contracted work. Bally's and IGT hid the fact that this was not a machine that Bally's was operating and responsible to pay wins.

60.    Bally's, with knowledge and consent of IGT,  intentionally tampered with the machine, instead of waiting for a gaming official to investigate.

61.    Bally's, with knowledge and consent of IGT,  intentionally intimidated Plaintiffs and witnesses so that Plaintiffs would accept a lesser amount of the jackpot.

62.    IGT, with knowledge and consent of Bally's,  intentionally avoided service of the complaint by falsely claiming that IGT could only be served through the Hague.

63.    Bally's and IGT jointly conspired to advertise misleading depictions of risk: Advertisements and the WAP machines lacked odds information. Most advertisements highlighted low risk offers, potential wins, and used unclear language like 'playing' instead of 'betting'.

64.    Important details like wagering requirements and "malfunction" were intentionally hidden, making it difficult for Plaintiffs to know the true costs involved or rules of the game. Hidden below where the player inserts cash in small 8-point print, there is an inadequate, barely noticeable statement "Malfunction voids all pays and plays".

65.    Even if elderly Plaintiff noticed this hidden message, and could read this small print, she was illiterate and unable to understand this statement.

66.    Defendants adverts depicted slot games in a way that makes them seem more exciting and profitable than they actually are. Bally's ads state: "$100 moneyback guarantee"; "$200M

won monthly"; "Daily Promos"; "Get $10. FREE"; "turn bonuses into cash faster"; "thrilling exclusives"; "we are all about excitement, rewards, and prizes for all"; "if you join now, you can get up to $100 moneyback guarantee on your first deposit. Available in both New Jersey and Pennsylvania".[2]

67. Instead, to avoid these deceptive ads and practices, Bally's and IGT should state: "We're in the 'entertainment' business. We hate winners. We don't pay and kick out winners. Only losers are welcome!"

## CAUSES OF ACTION

## COUNT ONE

## BREACH OF ALEATORY CONTRACT AGAINST ALL DEFENDANTS

68.     Plaintiffs repeat and reallege each and every paragraph above as if set forth at length herein.

69.      When you gamble at a casino, there is an implied agreement that if the Player wins, the casino will pay out the winnings.

70.     Plaintiff entered into a valid aleatory contract with Bally's, by playing at their casino, where the outcome depended on uncertain events.

71.     Plaintiff performed her obligations by playing the game according to the rules set forth by defendant Bally's.

_____

[2] https://play.google.com/store/apps/details?id=com.gamesys.ballycasino&hl=en_US

72.     Defendants Bally's and IGT failed to perform its obligations under the contract by refusing to pay the Plaintiff's rightful winnings, which were due based on the uncertain event's outcome.

73.     Defendant Bally's and IGT conduct constitutes a breach of the aleatory contract as they did not fulfill its obligation to pay the winnings.

74.     Plaintiffs have suffered damages due to Defendant Bally's breach, the non-payment of the Jackpot winnings.

75.     Mrs. Beal placed her and her husband's money into the Wheel of Fortune Wide Area Progressive slot machine, and it hit the Jackpot, as stated herein.

76.     Bally's denies the obligation to make the payment and indicates the paying of the winnings is the responsibility of Defendant IGT.

77.     Upon receiving this information Plaintiff's counsel demanded payment from IGT of the winnings owed to Plaintiffs.

78.     Defendant IGT failed to perform its obligations under the contract by refusing to pay the Plaintiff's rightful winnings, which were due based on the uncertain event's outcome.

79.     Defendant IGT's conduct constitutes a breach of the aleatory contract as it did not fulfill its obligation to pay the winnings.

80.     Bally's and IGT have jointly refused to pay winnings after Plaintiff properly played and won the Jackpot on the "Wheel of Fortune" slot machine.

81.     This breach of contract by Bally's and IGT has caused Plaintiffs to incur substantial damages, specifically by the non-payment of the Jackpot winnings.

**Wherefore**, plaintiffs, Roney and Richard Beal, demand judgment against Bally's and IGT

as follows:

    a.  Damages in an amount of $2,555,908.70;

    b.  Interest, cost of suit, attorney's fees, and other such relief as this court deems proper.

## COUNT TWO

### BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

### AGAINST ALL DEFENDANTS

82.    Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

83.    Plaintiffs performed all the significant obligations under the Aleatory contract by paying the required fee for the game of chance.

84.     All conditions required for Defendants performance had occurred.

85.    By failing to maintain the machine and failing to pay out the winnings, Defendants unfairly interfered with Plaintiffs right to receive the benefits of the contract, and they damaged Plaintiffs in an amount to be proved at trial.

86.    Bally's and /or IGT should bear the risk of an alleged "computer glitch" or "malfunction" when the machine shows the player that she won.

87.    Any alleged excuse for non-payment for "malfunction" was voided when Bally's, with the knowledge and consent of IGT, tampered with the machine and failed to preserve evidence.

    **Wherefore**, Plaintiffs, Roney and Richard Beal, demand judgment against Bally's and IGT as follows:

    a.  Damages in an amount of $2,555,908.70;

    b.  Interest, cost of suit, attorney's fees, and other such relief as this court deems proper.

## COUNT THREE

## NEGLIGENCE AGAINST ALL DEFENDANTS

88.     Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

89.     Bally's and IGT had a duty to properly design, control, and maintain the slot machine.

90.     Bally's and IGT, acting in concert, breached that duty by, among other things: failing to maintain, design, control, and monitor the slot machine in question: failing to coordinate and perform all design elements so that the machine would operate properly: and, failing to exercise requisite care, skill and knowledge in accordance with recognized standards of the slot machine profession.

91.     Bally's and IGT, acting in concert, failed to properly train and monitor employees with the proper protocol on verifying wins.

92.     Bally's and IGT, acting in concert, failed to properly design, manage, or maintain the slot machine to ensure that the winnings would be paid out after a player won.

93.     Defendants Bally's and IGT, acting in concert, failed to properly and adequately advise players that an alleged "malfunction" would void all plays.

94.     Defendants Bally's and IGT, acting in concert, failed to behave with the level of care that a reasonable person would have exercised under the same circumstances.

95.     The result of Defendants Bally's and IGT's conduct caused Plaintiffs harm.

96.     As a result of Defendants Bally's and IGT's refusal to pay, and the negligent behavior of its employees, Plaintiff Roney Beal has suffered physical and emotional harm.

97.     Bally's and IGT's breach of duty resulted in the Plaintiff not being paid her winnings and caused Plaintiff's to suffer severe emotional distress and harm.

98.     As a result of Defendants Bally's and IGT's refusal to pay, and the negligent behavior of

its employees, Plaintiff Husband, Richard Beal, has suffered emotional distress in witnessing the event, the way Bally's treated himself and his wife and a loss of consortium.

**Wherefore**, plaintiffs, Roney and Richard Beal, demand judgment against Bally's and IGT as follows:

a. Damages in an amount of $2,555,908.70;

b. Interest, cost of suit, attorney's fees, and other such relief as this court deems proper.

## COUNT FOUR

## NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS

99.   Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

100.   Among the falsehoods, Defendants misrepresented to Plaintiffs that if they paid the fee to play the game of chance "Wheel of Fortune" WAP, and the machine hit the 'jackpot', that they would be paid the winnings.

101.   Defendants intended for Plaintiffs to rely on these misrepresentations.

102.   Plaintiffs reasonably relied on Defendants' representations, and such reasonable reliance was a substantial factor in the harm and damages Plaintiffs suffered.

**Wherefore**, plaintiffs, Roney and Richard Beal, demand judgment against Bally's and IGT as follows:

a. Damages in an amount of $2,555,908.70;

b. Interest, cost of suit, attorney's fees, and other such relief as this court deems proper.

## COUNT FIVE

## FALSE PROMISE AGAINST ALL DEFENDANTS

103.   Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

104.    Among other falsehoods, Defendants misrepresented to Plaintiffs that they were playing a Bally's slot machine, that Bally's would pay any winnings, and that Plaintiffs would receive all or substantially all of their money if they hit any machine win, especially the 'jackpot'.

105.    These promises were integral to Plaintiff's decision to play at Bally's casino.

106.    Defendant Bally's did not intend to perform the promised payment in the event of a win on the "Wheel of Fortune" WAP slot machine as Bally's and IGT had a secret agreement between themselves that IGT would be responsible for any payouts.

107.    Neither Bally's nor IGT provided information to members to the public, including Plaintiffs, that players winning on a "Wheel of Fortune" slot machine located in Bally's casino would not be paid any winnings by Bally's casino.

108.    Bally's and IGT had a secret agreement between themselves that IGT would permit Bally's casino employees to open a machine where there was an alleged 'reel tilt' without authority from a supervisor from IGT or New Jersey Gaming Commission being present.

109.    Defendants made false promises as they did not intend to perform the promised winning payment and would claim a 'computer glitch', tampered with the machine, intimidated the players to accept a smaller dollar amount, banned the players from the casino, denied the players the opportunity to meet with management.

110.    Defendants intended that Plaintiffs would rely on this false promise of payment in the event of a "jackpot", and they used the false promises to convince Plaintiffs to play the "Wheel of Fortune" slot machine.

111.    Defendants did not perform the promised act; for example, paying the jackpot winnings.

112.    Plaintiff's reasonable reliance on Defendants representations constituted a substantial

factor in the damages Plaintiffs suffered.

**Wherefore**, plaintiffs, Roney and Richard Beal, demand judgment against Bally's and IGT as follows:

a.   Damages in an amount of $2,555,908.70;

b.   Interest, cost of suit, attorney's fees, and other such relief as this court deems proper.

## COUNT 6

## FALSE ADVERTISING AGAINST ALL DEFENDANTS

113.   Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

114.   Defendants publicly disseminated advertisements through various media, such as letters, television, mailings, emails, billboards and the internet, to Plaintiffs that contained statements inducing Plaintiffs to 'play' at Bally's casino on its slot machines where they could win and that the winners would be paid.

115.     advertisements concerned real and implied promises that the winner would be paid.

116.   Plaintiffs relied on Defendants' advertisements and statements Defendants abilities and claims that winnings would be paid.

117.   Plaintiff's reasonable reliance on Defendant's false promises constituted a substantial factor in the harm Plaintiffs suffered, the exact amount to be proved at trial.

**Wherefore**, plaintiffs, Roney and Richard Beal, demand judgment against Bally's and IGT as follows:

a.   Damages in an amount of $2,555,908.70;

b.   Interest, cost of suit, attorney's fees, and other such relief as this court deems proper.

## COUNT 7

BEAL V. BALLYS, ET AL FIRST AMENDED VERIFIED COMPLAINT
PAGE **17** OF **21**

## RACKETEERING AGAINST ALL DEFENDANTS

118.    Plaintiffs repeat and reallege each and every paragraph above as if set forth herein.

119.    It is a violation of New Jersey law and policy for any person to engage in a pattern of racketeering activity and it is in the public interest to provide that activity which is inimical to the general health, welfare and prosperity of the State of New Jersey and its citizens be made subject to strict civil sanctions.

120.    Defendant Bally's, aided by its co-defendant IGT, along with others, have engaged in a pattern of racketeering activities in their dealings with casino patrons.

121.    Plaintiffs have been contacted by more than 7 Casino Patrons who have experienced similar occurrences resulting in winners not being paid by the Casinos or IGT.

122.    The following acts, along with other acts to be disclosed in the course of the continuing proceedings herein, are "Prohibited Acts" within the definition of racketeering activity in such case made and provided, including N.J.S.A. 2C:41-1:

   a.    Bally's, aided by co-defendant IGT, and others, committed fraud in violation of N.J.S.A. 2C:21-3 (fraud related to public records and recordable instruments) by fraudulently concealing and misrepresenting the ownership of slot machines for the sole purpose of stealing winnings from casino patrons, including Plaintiffs;

   b.    Bally's, aided by co-defendant IGT, and others, committed fraud in violation of N.J.S.A. 2C:21-4 (falsifying or tampering with records) by tampering with the machine in question with the purpose to deceive Plaintiff and to conceal wrongdoing;

   c.    Bally's, aided by co-defendant IGT, and others, committed mail fraud in violation of 18 U.S.C. 1341 by using the mails to further their scheme to defraud Plaintiffs. The object of

their scheme was to prevent payment of winnings to the Plaintiff. These defendants thereby utilized the mails to deprive Plaintiffs of their property (the winnings).

d.  Defendant Bally's, aided by its co-defendant IGT, and others, acting in concert, committed fraud by training their employees to improperly open the machines when a jackpot has been won.

123.  The foregoing acts are not isolated but, constitute a pattern of racketeering activity as defined in N.J.S.A. 2C:41-1. Bally's, aided by co-defendants IGT, and others, entered into numerous transactions defrauding Casino Patrons and Plaintiffs utilizing Bally's business premises, employees, computer systems, telephone system and other personal property owned and/or maintained by Bally's and IGT for the sole purpose of advancing their own pecuniary interests to the detriment and prejudice of Plaintiffs, including receiving kickbacks from Co-Defendant. Upon information and belief, these defendants committed numerous such transactions with each transaction constituting a separate racketeering act and thereby demonstrating a pattern of such racketeering activity.

124.  Bally's, aided by its co-defendants IGT, and others unknown thus far, are persons within the definition of the same set forth in N.J.S.A. 2C:41-1(b), and that each of them is a legal entity that constitutes an "enterprise" within the meaning of N.J.S.A. 2C:41-1(c).

125.  In accordance with N.J.S.A. 2C:41-4(c), each of the Plaintiffs is a person damaged by reason of a violation of N.J.S.A. 2C:41-2 and has standing to sue in this Court to recover treble damages it has sustained and the costs of suit, including reasonable attorneys' fees, costs of investigation and litigation.

**Wherefore**, Plaintiffs demand judgment against All Defendants jointly and severally as

follows:

    a.  Enjoining and restraining Defendants, directly or indirectly, from transferring, disposing of, assigning and/or hypothecating any of their assets until further Order of this Court;

    b.  Mandatorily enjoining and restraining all defendants from further tampering with the machine in question;

    c.  Mandatorily enjoining and compelling the defendants to provide a forensic review of all actions of Defendants and their actors to date;

    d.  Mandatorily enjoining and compelling the defendants to provide an accounting of all commissions, kickbacks and all other forms of compensation received from any party involved with the "Wheel of Fortune" WAP  progressive Jackpot machines;

    e.  For compensatory damages trebled, plus interest;

    f.  Punitive damages; and,

    g.  For counsel fees, interest and costs of suit; and for such other and further relief as the Court may deem just and equitable.

## DEMAND FOR TRIAL

Plaintiffs demand a trial by jury on all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Federal Rules of Procedure, Michael S. Di Croce, Esq., is hereby designated as trial counsel for Plaintiff.

Respectfully submitted,

_____

BEAL V. BALLYS, ET AL FIRST AMENDED VERIFIED COMPLAINT
PAGE **20** OF **21**

Michael S. Di Croce, Esq.
*Attorney for Plaintiffs*
**Di Croce Law Firm, PC**