[ECF No. 71]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| RONEY BEAL,<br><br>**Plaintiff,**<br><br>v.<br><br>PREMIER ENTERTAINMENT AC, LLC D/B/A BALLY'S ATLANTIC CITY CASINO RESORT, JOHN DOES 1-5, & ABC CORPORATIONS 1-5,<br><br>**Defendants.** | Civil No. 24-7815 |

**AMENDED MEMORANDUM ORDER**

This matter having come before the Court on Defendant Premier Entertainment AC, LLC d/b/a Bally's Atlantic City Casino Resorts' ("Defendant") Motion to Administratively Terminate Plaintiff's Complaint, ECF No. 71 ("Def.'s Mot."). Plaintiff Roney Beal ("Plaintiff") opposed the motion, ECF No. 73 ("Pl.'s Opp."), and Defendant filed a reply, ECF No. 76 ("Def.'s Reply") and supplemental authority, ECF No. 90. Having considered the parties' submissions, the Court exercises its discretion to decide Defendant's Motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons that follow, Defendant's Motion is **GRANTED.**

A.   **Factual Background**

1.   The current action involves Plaintiff's claim that Defendant breached an aleatory contract with Plaintiff. *See generally* ECF No. 45 ("Third Am. Compl."), Count One, ¶¶ 37-53.[1]

---

[1] Plaintiff also raised a negligence claim; however, the Court dismissed it with prejudice pursuant to the economic loss doctrine. *See* ECF No. 62.

1

2. According to the Third Amended Complaint, Defendant is a Rhode Island corporation that operates a casino in Atlantic City, New Jersey. *Id.* ¶ 2.

3. On February 25, 2024, Plaintiff was an invited guest at Defendant's casino, where she played a Wheel of Fortune, Wide Area Progressive slot machine. *Id.* ¶ 6. Upon inserting her money into the machine, Plaintiff alleges that she entered a contract with Defendant, which was the "uncertain event's outcome."[2] *Id.* ¶ 17. Plaintiff allegedly won two times the amount of the "Wide Area Progressive" Jackpot, totaling $2,555,908.70. *Id.* ¶ 15. After realizing she won, Plaintiff pushed the machine's service button to request employee assistance. *Id.* ¶ 18. Subsequently, a message reading "REEL TILT" appeared on the screen. *Id.* According to the Third Amended Complaint, this was the first time an error message appeared during Plaintiff's use of the machine. *Id.*

4. In accordance with the error message's instructions, Defendant employees opened the machine with an ID card and reset key. *Id.* ¶ 19. Notwithstanding Plaintiff's objections, Defendant's employees proceeded to push buttons and spin the wheel multiple times. *Id.* ¶ 20. Defendant's employees eventually informed Plaintiff that she had not won because the machine malfunctioned, there was a computer glitch, and a machine tilt. *Id.* ¶¶ 21-22, 25.

5. After being refused a meeting with Bally's management, Plaintiff filed a State of New Jersey Division of Gaming Enforcement ("DGE") "Patron Complaint Form.". *Id.* ¶¶ 28-29. As of June 6, 2025, Plaintiff claims she has yet to receive a response; however, Defendant states that the DGE investigation remains ongoing. Pl.'s Opp. at 2; Def.'s Mot. at 1.

6. Plaintiff filed this lawsuit in state court on June 7, 2024. On July 16, 2024, Defendant removed the action to this Court. *See* ECF No. 1 (Notice of Removal). On November 21, 2024, Plaintiff filed her Third Amended Complaint against Defendant for breach of aleatory contract with

---

[2] An aleatory contract exists where an obligor's obligation to perform is contingent on the occurrence of a specified, but uncertain, event. *Paul Revere Life Ins. Co. v. Haas*, 137 N.J. 190, 207 (1994).

damages amounting to the full value of the alleged jackpot win along with interest, cost of suit, and attorney's fees. Third Am. Compl. ¶¶ 37-53 (Count One).

7. Defendant filed its answer on May 30, 2025, in which it asserted as an affirmative defense, that the machine malfunction prevented Plaintiff from validly winning the jackpot and the parties from creating a binding contract. ECF No. 69 ("Answer") ¶¶ 1-4.

8. Defendant now moves for an order staying the case pending the conclusion of the DGE investigation. Def.'s Mot. at 2. Notably, Defendant cites N.J.A.C. § 13:69E-1.28A, which reads "each slot machine shall include conspicuous language which states that a malfunction voids all pays." *Id.* at 4. Defendant argues that because the success of Plaintiff's breach of aleatory contract claim depends on whether the machine malfunctioned, and because the DGE investigation would conclusively determine that issue, the Court should stay the case. *Id.* at 4-5.

9. Plaintiff argues in opposition that: (1) the New Jersey Casino Control Act ("CCA") does not preempt her common law claims; (2) she has commenced but need not exhaust administrative remedies; and (3) that the CCA does not have jurisdiction to adjudicate private civil claims. Pl.'s Opp. at 3-6.[3]

**B.   Legal Standard**

10. Motions to stay proceedings[4] are committed to a district court's "sound discretion." *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir.

---

[3] Several of Plaintiff's citations in support of its arguments are incorrect. For example, Plaintiff cites *Campione v. Adamar of N.J., Inc..*, 302 N.J. Super. 99 (1998) for two quotes regarding the CCC's jurisdiction over common law claims. Pl.'s Opp. at 6. Neither of these quotes appear in that case or in any other identifiable case. Nonetheless, the Court finds Plaintiff's arguments largely irrelevant to the issue here because Defendant does not argue either that Plaintiff has failed to exhaust administrative remedies or that Plaintiff's claims are preempted. Rather, Defendant is simply seeking a stay of the case until the DGE completes its investigation. Accordingly, the Court need not address these arguments.

[4] Although Defendant styles its Motion as a request for administrative termination of Plaintiff's Complaint, such relief is akin to a stay, and therefore, the Court applies the standards for a motion to stay.

1976). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id*. at 254-55. The Court remains mindful that the stay of a civil proceeding is an "extraordinary remedy," and the moving party bears the burden of showing that a stay is warranted. *Konopca v. Comcast Corp.*, No. 15-6044, 2016 WL 1645157, at *3 (D.N.J. Apr. 26, 2016).

11. "[A] district court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp.*, 544 F.2d at 1215. "[W]here a stay is sought pending resolution of purportedly related litigation, [] courts consider whether resolution of the related litigation would substantially impact or otherwise render moot the present action." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014); *see also MEI, Inc. v. JCM Am. Corp.*, No. 09-351, 2009 WL 3335866, at *4 (D.N.J. Oct. 15, 2009) ("A stay is particularly appropriate, and within the court's sound discretion, where the outcome of another case may substantially affect or be dispositive of the issues in a case pending before a district court.") (internal quotations omitted).

12. In determining whether to grant a stay, courts generally consider:

   a. whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party;
   b. whether denial of the stay would create a clear case of hardship or inequity for the moving party;
   c. whether a stay would simplify the issues and the trial of the case; and
   d. whether discovery is complete or a trial date has been set.

*Akishev,* 23 F. Supp. 3d at 446.

C. <u>Analysis</u>

13. Upon review of the parties' briefing, the Court finds that Defendant has established grounds which warrant a stay and/or administrative termination.

14. Primarily, Defendant has shown that the Casino Control Commission ("CCC") has primary jurisdiction over matters which involve the CCA. In *Campione v. Adamar, Inc.*, 155 N.J. 245 (1998), the New Jersey Supreme Court recognized that "[t]he pervasiveness of the regulatory scheme controlling the casino industry indicates that the Legislature intended to invest the CCC with primary jurisdiction to regulate the casino industry." *Id.* at 264. Numerous courts have granted stays where the cases depend on a technical analysis of the CCA's regulations. *See Chan v. Boardwalk 1000*, No. 21-10498, 2021 WL 4306828, at *5 (D.N.J. Sept. 22, 2021) (granting administrative termination because plaintiff's complaint alleged various violations of the CCA, and thus, the DGE and CCC were in the "best position[] to consider" defendant's compliance); *Marina Dist. Dev. Co., LLC v. Ivey*, 93 F. Supp. 3d 327, 331 (D.N.J. 2015) (granting administrative termination because the CCC had to first determine if, as plaintiff alleged, defendant had in fact committed various violations of the CCA).

15. Moreover, Defendant has shown that the success of Plaintiff's claim relies on the CCA's regulations. Plaintiff argues that her case "is a straightforward breach of contract, not a challenge to the interpretation, validity, or enforcement of gaming regulations." Pl.'s Opp. at 4. However, while Plaintiff was careful to exclude any allegations of CCA violations in her Complaint, Defendant's defenses, and thus the resolution of Plaintiff's claim, directly depend on the CCA. More specifically, Defendant's Answer asserts that the slot machine in question malfunctioned, and therefore, there was no validly won jackpot and in turn, no aleatory contract. Answer, Affirmative Defenses ¶ 4. Under the CCA regulation, "[e]ach slot machine shall include conspicuous language which states that a malfunction voids all pays." N.J.A.C. § 13:69E-1.28A.[5] Thus, resolution of

---

[5] Defendant's Motion also references numerous other CCA provisions that are implicated by this case. *See* Pl.'s Mot. at 4-5 (citing N.J.A.C. § 13:69E.1.28B ("All control programs shall be designed to recognize and report the following game error codes, at a minimum, to a slot monitoring system and place the slot machine into an unplayable status or tilt: . . . [r]eel tilt."); N.J.A.C. § 13:69E-1.28B ("Control programs shall be designed to notify the patron and casino licensee of any slot

Plaintiff's claims requires a determination of whether the slot machine malfunctioned—a finding that falls squarely within the CCC's purview, and more specifically, the DGE. Plaintiff's simple omission of allegations that Defendant failed to comply with the CCA regulations does not preclude the Court's deferral to the CCC or DGE because "[c]asinos and patrons alike may assert common-law claims based on violations of the CCA as a defense to the payment of casino winnings and losses." *See Golden Nugget Atl. City LLC v. Chan*, 189 N.Y.S. 3d 81, 83 (N.Y. App. Div. Apr. 27, 2023) (applying New Jersey law and reversing trial court's grant of summary judgment to the defendant, explaining that because defendant's defenses relied on plaintiff's compliance with the New Jersey CCA, the court should have deferred any decision until receipt of DGE's ruling on the plaintiff's patron complaint). In short, a defense that relies on the CCA requires no less deference than an affirmative allegation that does the same.

16. Having met its burden of establishing grounds that warrant a stay, the Court now weighs Defendant's interests in the stay against Plaintiff's opposing interests.

17. First, a stay would not unduly prejudice or present a clear tactical disadvantage to Plaintiff. Plaintiff contends that she is "entitled to have her breach of contract claim heard and adjudicated by a jury of her peers, particularly in light of her advanced age, deteriorating health, and the unreasonable delay by the administrative agencies tasked with oversight, which have failed to provide any meaningful remedy or resolution." Pl.'s Opp. at 5. However, "[d]elay inherently results from the issuance of a stay, but 'mere' delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage." *Ashkiev*, 23 F. Supp. 3d at 447. Rather, the nonmoving party must demonstrate "a particularly unique injury." *Icona Opportunity Partners 1, LLC v. Certain*

---

machine tilts via an error message or other method approved by the Division."); N.J.A.C. § 13:69E-1.20 (requiring that "[s]lot machines" have "an inspection by the Division prior to initial use or following any modification"); N.J.A.C. § 13:69E-1.31 (providing rules for "reports for customer complaints"); N.J.A.C. § 13:69E-1.39C (providing rules for wide area progressive gaming devices)).

*Underwriters at Lloyds, London*, No. 22-4140, 2023 WL 2473644, at *6 (D.N.J. Mar. 13, 2023) (cleaned up).  The mere invocation of age or fading memory, without more, is insufficient to establish prejudice.  *See Frantatoro v. Grabato*, No. 23-53, 2023 WL 5605669, at *5 (D.N.J. Aug. 30, 2023).  Moreover, while a stay may delay litigation of the claims, both Plaintiff and Defendant will have the benefit of the DGE's investigation of the facts and interpretation of the CCA regulations, which could simplify the issues in dispute or even prove dispositive of the matter.

18. Second, denying a stay would create a clear hardship or inequity for the Defendant.  "The cost to a party by litigating 'in an uncertain legal landscape' awaiting a controlling decision from another court is a hardship that supports a stay of proceedings."  *Id.* at *7 (quoting *Yoo v. Dynamic Recovery Sols., LLC*, No. 19-21601, 2020 WL 12654351, at *2 (D.N.J. Feb. 26, 2020)).  Here, the DGE's investigation will control the landscape of this case.  Logically, if the Court denies a stay, and the DGE's investigation concludes that Defendant was compliant, such a conclusion may obviate Defendant's obligation to pay Plaintiff under an aleatory contract theory, and Defendant will have incurred unnecessary litigation expenses.

19. Third, a stay would simplify the issues and the trial of the case.  The purpose of this stay is to determine Defendant's compliance with the CCA.  Compliance would support Defendant's defense, while noncompliance would support Plaintiff's allegations.  Thus, regardless of the outcome of the investigation, its findings will simplify the issues and trial of the case.[6]

20. Finally, discovery has not yet begun, and the Court has not yet set a trial date.  These facts weigh in favor of a stay.  *See Concepcion v. Carbar*, No. 22-5456, 2024 WL 3070201, at *4 (D.N.J. June 20, 2024) (granting a discovery stay in part because "[t]he Court finds that discovery is not complete [and] a trial date has not been set . . . ."); *Icona Opportunity Partners*, 2023 WL

---

[6] Federal Rule of Civil Procedure 1 also supports a stay here because a stay is just and inexpensive.  Fed. R. Civ. P. 1 (requiring "[c]ourt[s] and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

2473644, at * 7 (granting a stay where the action was in an early phase, defendants' motions to dismiss were pending, discovery had not yet begun, and a trial date had not been set); *but see Udeen v. Subaru of Am., Inc.*, 378 F. Supp. 3d 330, 333 (D.N.J. 2019) ("The fact that the case is at an early stage and no trial date has been set is not a persuasive relevant factor to the [c]ourt's decision."). Therefore,

**IT IS** this **19th** day of **August 2025**,

**ORDERED** that Defendant's Motion to Administratively Terminate Plaintiff's Complaint, ECF No. 71, is **GRANTED**; and it is further

**ORDERED** that this action and any pending motions are **ADMINISTRATIVELY TERMINATED**; and it is further

**ORDERED** that this Order shall not constitute a dismissal order under the Federal Rules of Civil Procedure; and it is further

**ORDERED** that no later than **thirty (30) days** after the date this Order is filed, Defendant shall submit a status update regarding the DGE's investigation and when Defendant expects its conclusion.

s/Elizabeth A. Pascal<br>
ELIZABETH A. PASCAL<br>
United States Magistrate Judge

cc:  Hon. Christine P. O'Hearn, U.S.D.J.